IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THOMAS WARDELL DOLPHUS,

    Petitioner,

v.                                                                                                      2:20-cv-00004-JCH-LF

ATTORNEY GENERAL OF
THE STATE OF NEW MEXICO, *et al.*,

    Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on petitioner Thomas Wardell Dolphus' Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed on January 3, 2020. Doc. 1. At the Courts direction, the respondents filed their answer on January 6, 2021. Doc. 17. Mr. Dolphus did not file a response to the answer.

On October 19, 2020, the Court ordered respondents to file an answer addressing both whether Mr. Dolphus had exhausted his state court remedies as well as the merits of his claims. Doc. 10. Respondents' answer noted that Mr. Dolphus had not exhausted his state court remedies as to Grounds 1, 4, and 5. Doc. 17 at 8–16. The Court agreed, but also concluded that Mr. Dolphus had not exhausted part of Ground 3—his claim that insufficient evidence supported his possession conviction. Doc. 20 at 7–9; Doc. 26 at 2. Because Mr. Dolphus had not exhausted his state court remedies, Senior United States District Judge Judith C. Herrera ordered Mr. Dolphus to file a statement expressing his wish to proceed only with his exhausted claims. Doc. 26. On October 19, 2021, Mr. Dolphus elected to proceed only on his exhausted claims— Grounds 2 and 3 (to the extent that Ground 3 challenged his manufacturing convictions). Docs. 30, 31. Judge Herrera referred this case to me pursuant to 28 U.S.C. §§ 636(b)(l)(B) and (b)(3)

to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. Doc. 16.

Having considered the parties' submissions, the relevant law, and the record in this case, I find that the state court adjudicated Mr. Dolphus' claims on the merits, that the state court decision was not contrary to nor did it involve an unreasonable application of clearly established federal law, nor was the state court decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. I therefore recommend that the Court dismiss Mr. Dolphus' petition with prejudice and deny a certificate of appealability.

## I.    Background Facts and Procedural Posture

On May 18, 2012, a grand jury indicted Mr. Dolphus in the Second Judicial District Court for the State of New Mexico on forty-five counts of sexual exploitation of children by possession (Counts 1–45) and fourteen counts of sexual exploitation of children by manufacturing (Counts 46–59). Doc. 17-1 at 1–14 (Ex. A).[1] On June 17, 2014, the state court dismissed Counts 2 through 45.[2] *Id*. at 44 (Ex. H), 73 (Ex. P), 103 (Ex. V). On March 25, 2015, the State of New Mexico filed a *nolle prosequi* as to Counts 46 through 57. *Id*. at 98 (Ex. T).

Over the next three years, with four different attorneys, Mr. Dolphus engaged in vigorous motions practice, including motions to review the conditions of his release, to dismiss, and to

---

[1] Except as otherwise noted, all citations are to the exhibits attached to Respondents' Response to Thomas Wardell Dolphus's *Pro Se* Petition for Writ of Habeas Corpus (Doc. 17) and Notice of Filing of State-Court Transcripts (Doc. 18). The Court cites to the CM/ECF pagination rather than any internal page numbers in the exhibits.

[2] In *State v. Olsson*, the New Mexico Supreme Court resorted to the rule of lenity to hold that the proper unit of prosecution in a possession of child pornography case is the entire compilation, rather than each individual image. *State v. Olsson*, 2014-NMSC-012, ¶ 2, 324 P.3d 1230, 1231. This was the reason for the dismissal of Counts 2 through 45 and the decision to file a *nolle prosequi* as to Counts 45 through 57. Doc. 17 at 2.

2

allow him to personally view the evidence against him. *Id*. at 391–94 (Ex. TT). Mr. Dolphus also filed a motion to dismiss based on a speedy trial violation, which the court denied. *Id.* at 69 (Ex. O), 101–13 (Ex. V). In May of 2015, Judge Judith Nakamura conducted a two-day bench trial and found Mr. Dolphus guilty of one count of sexual exploitation of children by possession occurring on April 26, 2012, one count of sexual exploitation of children by manufacture occurring on March 28, 2010, and one count of sexual exploitation of children by manufacture occurring on October 22, 2010. *Id*. at 124–34 (Ex. X), 135–45 (Ex. Y); *see also* Doc. 18-8 at 14–31. Judge Nakamura sentenced Mr. Dolphus to nineteen and a half years in prison, with six years suspended, for an actual term of thirteen and a half years of incarceration, followed by five to twenty years of supervised probation/parole.[3] Doc. 17-1 at 146–48 (Ex. Z). Mr. Dolphus appealed, arguing, among other things, that his case should have been dismissed for a speedy trial violation and that there was insufficient evidence as to his manufacturing convictions. *Id*. at 149–72 (Exs. AA–BB).

The New Mexico Court of Appeals affirmed. *Id*. at 339–68 (Ex. OO). The New Mexico Court of Appeals found that "despite the prejudice to [Mr. Dolphus] by his pretrial incarceration, . . . the other factors [did] not weigh so strongly in his favor as to establish a speedy trial

---

[3] Respondents indicated in their briefing that "[u]pon information and belief, Mr. Dolphus has completed his term of imprisonment and currently is serving in-house parole." *See* Doc. 17 at 3 n.3. Current court and correctional records show that Mr. Dolphus is in custody at the Central New Mexico Correctional Facility ("CNMCF"). *See* New Mexico Offender Search, https://cd.nm.gov/offender-search/ (last accessed February 27, 2023); *see also State of New Mexico v. Thomas Dolphus*, No. D-202-CR-2012-02432 (indicating a probation violation hearing on August 25, 2022); New Mexico Courts Case Lookup, https://caselookup.nmcourts.gov/caselookup/app (last accessed February 27, 2023). The Court takes judicial notice of the state court records. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (explaining that the Court may take judicial notice of publicly filed records in this court and other courts concerning matters that bear directly upon the disposition of the case at hand).

violation." *Id.* at 360.  The court also rejected Mr. Dolphus's attack on the sufficiency of the evidence of manufacturing, holding that "sufficient evidence supports [Mr. Dolphus'] convictions for manufacturing child pornography." *Id*. at 365.  Mr. Dolphus filed a petition for a writ of certiorari, which the New Mexico Supreme Court denied on February 18, 2019.  *Id*. at 369–82 (Ex. PP), 384–85 (Ex. RR).

On January 3, 2020, Mr. Dolphus timely filed the § 2254 federal habeas petition that is currently before the Court and the subject of this PFRD.[4]  Doc. 1.  In his *pro se* petition, Mr. Dolphus asserted five grounds for relief, including Ground 1 for ineffective assistance of counsel, Ground 2 for speedy trial violation, Ground 3 for insufficient evidence, Ground 4 for lack of jurisdiction, and Ground 5 for discovery violations and errors by the court.  *See* Doc. 1 at 6–14.  The Court conducted an initial review of the petition and ordered respondents to file an answer addressing the merits of each claim and whether Mr. Dolphus had exhausted his state court remedies as to each claim.  Doc. 10.  In their response filed January 6, 2021, respondents assert that Mr. Dolphus filed a mixed petition containing both exhausted and unexhausted claims.  *See* Doc. 17 at 1, 8–10.  I recommended that the Court allow Mr. Dolphus to amend his petition to include only his exhausted claims: the asserted speedy trial violation (Ground 2) and his assertion that there was insufficient evidence to support his manufacturing convictions (part of Ground 3).  Doc. 20 at 12.  In the order adopting that recommendation, the Court ordered Mr. Dolphus to file a statement expressing his wish to proceed solely with his exhausted claims.  Doc. 26 at 2.  Mr. Dolphus filed his statement to proceed solely with his exhausted claims on

---

[4] The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations on filing a § 2254 petition. *Williams v. Workman*, 448 F. App'x 828, 829 (10th Cir. 2011) (citing 28 U.S.C. § 2244(d)(1)).  This limitations period begins to run on "the date on which the judgment [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review."  *Id.*

October 19, 2021. Doc. 30. Accordingly, the Court addresses only Grounds 2 and part of Ground 3 in this report and recommendation. For the reasons explained below, I find that neither of Mr. Dolphus' claims have merit. I therefore recommend that the Court deny Mr. Dolphus' petition.

## II. Federal Habeas Claims under the AEDPA

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In this two-step inquiry, the threshold question is whether the applicant seeks to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved the unreasonable application of that clearly established federal law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)) (internal quotation marks omitted).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

5

decision." *Williams*, 529 U.S. at 412.  A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405.  The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id*.  Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003).  The state court need not cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision unreasonably applies Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted).  "Rather, that application must be objectively unreasonable." *Id*. at 76.

Under AEDPA, state court findings of fact are "presumed to be correct."  28 U.S.C. § 2254(e)(1).  Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented, *see* § 2254(d)(2), must show by clear and convincing evidence that the determination was factually erroneous.  *See Miller-el v. Dretke*, 545 U.S. 231, 240 (2005).

6

Lastly, where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Cullen v. Pinholster*, 563 U.S. 179, 180–81 (2011) (citing § 2254(d)(1)). In other words, federal courts may not hold evidentiary hearings on claims that the state court decided on their merits. *Id.* at 181; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted), *overruled on other grounds as recognized in Lott v. Trammell*, 705 F.3d 1167 (10th Cir. 2013). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). When the state's highest court offers no explanation for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

"Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). The Supreme Court has held that the standard is "highly deferential" to state courts and "difficult to meet," as it "demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (quoting *Richter*, 562 U.S. at 101; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

7

For federal habeas claims not adjudicated on the merits in state courts, the Court must review the claim *de novo*, and the deferential standards of § 2254(d) do not apply. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III. Discussion

### A. Ground 2: Speedy Trial Violation

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. AMEND. VI. In evaluating a speedy trial violation, courts must weigh "the conduct of both the prosecution and the defendant" to determine whether a defendant has been deprived of his constitutional speedy trial rights. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). In doing so, the Court considers four factors, including the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id*. None of these factors is, by itself, "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533.

Mr. Dolphus contends that "3 years for a trial to begin is not normal in any circumstance and is undoubtedly [a] violation of state and federal law." Doc. 1 at 8. It is clear that Mr. Dolphus sought to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. The New Mexico Court of Appeals acknowledged that "[w]hen reviewing a district court's speedy trial decision, we weigh and balance *de novo* four factors derived from *Barker v. Wingo*, 407 U.S. 514, 529–30 (1972)." Doc. 17-1 at 341.

Because the law was clearly established, the Court's review is limited to whether the court of appeals' application of the *Barker* factors was objectively unreasonable. *See Jackson v. Ray*, 390 F.3d 1254, 1259 (10th Cir. 2004). To that end, the Court must review the New Mexico Court of Appeals' findings on each of the four factors "for the limited purpose of determining

8

whether any finding is contrary to clearly established Supreme Court precedent or based upon facts that are clearly and convincingly erroneous in light of the state court record." *Id*. at 1260.

### 1. *First Factor: The Length of the Delay*

The first factor of the *Barker* test—length of the delay—is a dual inquiry. First, as a threshold matter, the Court must inquire into the remaining *Barker* factors only when the delay is "presumptively prejudicial." *Barker*, 407 U.S. at 530. Second, "[i]f the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett v. United States*, 505 U.S. 647, 652 (1992). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. The Supreme Court has observed that depending on the nature of the charges, lower courts generally have found delay approaching one year to be presumptively prejudicial, thereby triggering the *Barker* balancing test. *Doggett*, 505 U.S. at 652 n.1 (1992). The Tenth Circuit similarly has held that "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006).

In this case, Mr. Dolphus was arrested on April 26, 2012, and was continuously incarcerated until his conviction on May 5, 2015. Doc. 17-1 at 344. The New Mexico Court of Appeals concluded that the three-year delay between Mr. Dolphus' arrest and his trial was presumptively prejudicial. Doc. 17-1 at 344. Second, the court determined that the three-year delay stretched beyond the bare minimum needed to trigger judicial examination of the claim. The Court of appeals found that the three-year delay "surpassed the eighteen-month point at

which a complex case becomes presumptively prejudicial by an additional eighteen months and triggers further inquiry into the *Barker* factors." *Id.* (internal citation and quotations omitted).[5]

Mr. Dolphus objected to the district court's determination that the case was "complex" because the state overcharged him with forty-five counts of possession and fourteen counts of manufacturing child pornography, and only one count of possession and two counts of manufacture survived until the time of trial. Doc. 17-1 at 342–43. The New Mexico Court of Appeals observed, however, that Mr. Dolphus had "more than 100,000 images saved on CDs found at his residence. Of those images, the State classified more than a thousand as child pornography." *Id*. at 343. Further, all but one of the forty-five possession counts were dismissed after the New Mexico Supreme Court's decision in *State v. Olsson*, 2014-NMSC-012, 324 P.3d 1230—decided two years after defendant's arrest—which concluded that a defendant could be charged with only a single count of possession for multiple images. *Id*. Consequently, the district court dismissed all but one of the counts of possession. *Id*. The New Mexico Court of Appeals' weighing of the first factor was consistent with clearly established Supreme Court precedent and was not based on clearly erroneous facts.

---

[5] The New Mexico Court of Appeals explained that under New Mexico law

> A delay is presumptively prejudicial if it extends beyond one year for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. [*State v. Garza*, 2009-NMSC-038, ¶ 2, 146 N.M. 499, 503, 212 P.3d 387, 391)]. "In determining what weight to give the length of any delay, we consider the extent to which the delay stretched beyond the presumptively prejudicial period." *State v. Lujan*, 2015-NMCA-032, ¶ 11, 345 P.3d 1103, 1107. Greater delays will potentially weigh more heavily against the state, and delay amounting to little more than the minimum needed to trigger a speedy trial analysis will not weigh heavily in a defendant's favor. *Id*.

Doc. 17-1 at 342.

### 2. *Second Factor: Reasons for the Delay*

To examine the reasons for the delay, the New Mexico Court of Appeals divided the three-year time period into five distinct time frames. This approach was reasonable because "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. Deliberate attempts to delay weigh more heavily against the government. *See id*. Neutral reasons for the delay—such as overcrowded courts—should be given less weight "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. Finally, valid reasons, like negligence or a missing witness, will justify a delay. *Id*.

The New Mexico Court of Appeals found that the eight months between Mr. Dolphus' arrest on April 26, 2012, and January 22, 2013, weighed neutrally. Doc. 17-1 at 347–48. The court explained that from Mr. Dolphus' arrest until September 2012, pretrial litigation proceeded normally. *Id*. at 347. In September 2012, Mr. Dolphus became dissatisfied with his counsel, and she withdrew because of Mr. Dolphus' intimidating and aggressive behavior. *Id.* Mr. Dolphus was appointed new counsel, whom he sought to change again in October 2012. *Id.* at 347–48. The court rejected Mr. Dolphus' request to change counsel a second time at a hearing on October 4, 2012, and set a guilty plea hearing for January 4, 2013. *Id*. at 348. Despite Mr. Dolphus' issues with his counsel, the court found that these issues did not cause any delay and should not weigh against Mr. Dolphus.

During plea negotiations—the period between January 4, 2013, and October 10, 2013— the court found that three months weighed against the state as a result of both negligent delay and the State's request for a continuance of a pretrial conference. Doc. 17-1 at 348–49. The court weighed four months against Mr. Dolphus because he changed counsel again, and his new

attorney needed additional time to review the case and negotiate a plea deal. *Id*. at 349–51. The court weighed two months neutrally "because the delay during this time was attributable to [Mr. Dolphus'] motion to personally view the child pornography evidence." *Id*. at 350.

The New Mexico Court of Appeals also weighed the four-and-a-half-month delay between October 21, 2013, and March 7, 2014, neutrally. The court explained that "the new attorneys on both sides were familiarizing themselves with the case, as well as working on the conditions of release issue." *Id*. at 351. Similarly, the court weighed the period between March 7, 2014, and August 20, 2014, neutrally due to the "significant motion practice on the part of [Mr. Dolphus]." *Id*. at 352. Finally, the court weighed the eight-and-half-month delay between August 20, 2014, to May 5, 2015, slightly against the State for administrative delay, with the exception of one week that it weighed against Mr. Dolphus because his counsel requested a week extension of the trial date. *Id.* at 353–55. In total, the Court weighed nineteen-and-a half months neutrally, approximately five months against Mr. Dolphus, and thirteen months against the State. *Id*. at 355. Overall, the court weighed the reasons for delay slightly to moderately against the State. *Id.* The New Mexico Court of Appeals' weighing of the second factor was not contrary to clearly established Supreme Court precedent and was not based on clearly erroneous facts.

   3. *Third Factor: Assertion of the Right*

The New Mexico Court of Appeals next looked to whether Mr. Dolphus asserted his right to a speedy trial. Doc. 17-1 at 356. Such an assertion, if present, is given strong weight in deciding whether there has been a speedy trial violation. *See Batie*, 433 F.3d at 1291 ("Perhaps most important is whether the defendant has actively asserted his right to a speedy trial."); *see also Barker*, 407 U.S. at 531–32 ("The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of

the right."). The state court acknowledged that Mr. Dolphus had asserted his right to a speedy trial and had moved to dismiss on speedy trial grounds. Doc. 17-1 at 356. The court noted, however, that three of the assertions were "pro forma" and were made with the entry or substitution of counsel. *Id*. Mr. Dolphus' final attorney moved to dismiss on speedy trial grounds three and a half months before trial, but Mr. Dolphus had agreed to the trial setting several months earlier. *Id*. Consequently, the New Mexico Court of Appeals weighed this factor slightly in Mr. Dolphus' favor. The court's weighing of the third factor was not contrary to clearly established Supreme Court precedent and was not based on clearly erroneous facts.

    4.   *Fourth Factor: Actual Prejudice*

The fourth factor that courts must consider is the actual prejudice to the defendant from the delay. *Barker*, 407 U.S. at 530. "The individual claiming the Sixth Amendment violation has the burden of showing prejudice." *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009). A defendant can establish prejudice by two different means: (1) a presumption of prejudice, or (2) specific evidence of prejudice. *United States v. Muhtorov*, 20 F.4th 558, 653 (10th Cir. 2021).

    a)  Presumption of prejudice[6]

In cases of "extreme delay, the defendant need not present specific evidence of prejudice and may instead rely on the presumption of prejudice created by the extreme delay." *Toombs*, 574 F.3d at 1275. "Generally, the court requires a delay of six years before allowing the delay

---

[6] Both the first and fourth *Barker* factors involve "presumptive prejudice," but the analysis differs between the two. *See United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007) (cautioning against conflating the first and fourth prejudice prongs of the *Barker* test). "The first three factors should be used to determine whether the defendant bears the burden to put forth specific evidence of prejudice (or whether it is presumed)." *Id*. 473 F.3d at 665 (internal citation and quotation omitted).

13

itself to constitute prejudice." *United States v. Seltzer*, 595 F.3d 1170, 1180 n.3 (10th Cir. 2010). This rule stems from *Doggett*, in which the Supreme Court found "extraordinary" delay when more than eight years passed between indictment and arrest, six of which were attributed to the government's "inexcusable oversights." 505 U.S. at 652, 657–58 (quotations omitted). Thus, for purposes of establishing presumptive prejudice, "we should consider only the delay attributable to the government, and not the delay attributable to the defendant." *United States v. Hicks*, 779 F.3d 1163, 1168-69 & n.2 (10th Cir. 2015) (internal citation and quotations omitted).

           b)   Specific evidence of prejudice

"Absent presumptive prejudice, the defendant must provide evidence of prejudice with 'sufficient particularity.' " *Muhtorov*, 20 F.4th at 653–54 (internal citation omitted). "[I]n most circumstances, failure to specify prejudice will eviscerate the defendant's claim." *Id.* The Supreme Court has identified three interests relating to specific prejudice: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532.

Perhaps recognizing that the 13-months delay caused by the State did not constitute "extreme delay," and therefore prejudice could not be presumed, the New Mexico Court of Appeals did not analyze this factor for "presumptive prejudice." Instead, the court focused on whether Mr. Dolphus had presented specific evidence of prejudice. Doc. 71-1 at 357–59.

The New Mexico Court of Appeals addressed whether Mr. Dolphus presented any evidence of prejudice and found that he did not, despite invitations to do so. Doc. 17-1 at 357–59. Because there was no evidence of actual prejudice, the court refused to speculate as to the actual harm Mr. Dolphus suffered. Although the court could "presume that Defendant was prejudiced by his three years of continuous incarceration," it noted that "presumptive prejudice is

14

not dispositive of a speedy trial claim and 'cannot along carry a Sixth Amendment claim without regard to the other *Barker* criteria.' " *Id.* (citing *Doggett*, 505 U.S. at 656). "And without a showing of particularized prejudice, we are hard pressed to weigh this factor heavily in Defendant's favor." *Id*. The New Mexico Court of Appeals' weighing of the fourth factor was not contrary to clearly established Supreme Court precedent and was not based on clearly erroneous facts.

The manner in which the New Mexico Court of Appeals addressed Mr. Dolphus' speedy trial claim was not contrary to and did not involve the unreasonable application of clearly established federal law. The New Mexico Court of Appeals appropriately analyzed all four of the *Barker* factors. Mr. Dolphus' contention that "[three] years for a trial to begin is not normal in any circumstance and is undoubtedly [a] violation of state and federal law" (Doc. 1 at 8) is simply without merit. I recommend that this Court deny Ground 2 Mr. Dolphus' petition for habeas corpus based on a violation of his Sixth Amendment right to a speedy trial.

**B.    Ground 3: Sufficiency of Evidence**[7]

In federal habeas proceedings, the appropriate inquiry into a sufficiency-of-the-evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The Tenth Circuit has recognized,

> [i]t is clearly established that "the fundamental protection of due process of law" requires that the evidence presented at a criminal trial, viewed in the light most favorable to the prosecution, be sufficient to allow "*any* rational trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt."

---

[7] Although Mr. Dolphus challenges the sufficiency of the evidence with respect to all three of his convictions in his petition, *see* Doc. 1 at 9, he did not exhaust his claim that insufficient evidence supports his possession conviction, *see* Doc. 20 at 8–9; Doc. 26 at 2; Doc. 30 at 3; Doc. 31 at 2. Consequently, this PFRD only addresses the sufficiency of the evidence with respect to Mr. Dolphus' manufacturing convictions.

*Pavatt v. Carpenter*, 928 F.3d 906, 917 (10th Cir. 2019) (quoting *Jackson*, 443 U.S. at 319 (emphasis in original)).  The AEDPA additionally directs that, where the state court already has addressed the claim, this court's review is further limited under either section 2254(d)(1) or (d)(2).  *See Valdez v. Ward*, 219 F.3d 1222, 1237 (10th Cir. 2000).

      Mr. Dolphus makes two arguments in support of his insufficient evidence claim.  First, he contends that "there was never a factual finding of creation of disc." Doc 1 at 9.  Second, he contends that "due to nonsufficient chain of custody[,] where and when this disc [was] found was never determined [at] trial." *Id*.  Thus, Mr. Dolphus' allegations invokes § 2254(d)(2)—that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Mr. Dolphus fails, however, to show by clear and convincing evidence that the state court's determination was factually erroneous.

      Mr. Dolphus' first contention is simply incorrect.  In the Amended Findings of Fact and Conclusions of Law, Judge Nakamura found with respect to each of the two manufacturing counts[8] that Mr. Dolphus 'first downloaded child pornography onto his computer"; he "then placed a compact disk inside the compact disk tray," and then he "copied the child pornography

---

[8] To prove Mr. Dolphus guilty of the crime of sexual exploitation of children by manufacture, the State was required to prove that (1) Mr. Dolphus intentionally manufactured (2) obscene visual print media (3) that depicted a prohibited sexual act and (4) one or more of the participants was under the age of eighteen.  *See* N.M. Stat. Ann. § 30-6A-3(E). (This was § 30-6A-3(D) when Mr. Dolphus was indicted, but the elements of the offense were the same.  *See* Doc. 17-1 at 11–13.)  The term " 'manufacture' means the production, processing, *copying by any means*, printing, packaging or repackaging of any visual or print medium depicting any prohibited sexual act or simulation of such an act if one or more of the participants in that act is a child under eighteen years of age." N.M. Stat. Ann. § 30-6A-2(D) (emphasis added).  In Mr. Dolphus' case, the State's theory was that Mr. Dolphus copied child pornography from his computer and burned it onto a CD.  *See* Doc. 18-5 at 11; *see also State v. Smith*, 2009-NMCA-028, 145 N.M. 757, 204 P.3d 1267 (holding that copying images to an external drive constitutes manufacturing child pornography in violation of N.M. Stat. Ann. § 30-6A-3).

to a compact disk." *See* Doc. 17-1 at 136–38.  Judge Nakamura found that each disk was created while Mr. Dolphus was in Albuquerque, New Mexico, and that one disk was created on March 28, 2010, and the other was created on October 22, 2010.  *See id.*  Judge Nakamura concluded that in both instances, all of the elements of manufacturing were met.  *Id.* at 140–44.  The New Mexico Court of Appeals agreed with the district court, concluding that viewing the evidence in the light most favorable to the guilty verdict, "sufficient evidence supports [Mr. Dolphus'] convictions for manufacturing child pornography."  *Id.* at 365.

Mr. Dolphus' second contention also is without merit.  Judge Nakamura addressed the chain of custody issue at trial and found that, although there was a gap in the chain of custody, that gap went to the weight of the evidence, not its admissibility.  *See* Doc. 18-5 at 104–6. Evidence that is not uniquely identifiable—like the compact discs at issue here—require a sufficient chain of custody to support their admission.  *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989).  But the chain of custody does not have to be perfect.  *Id.*  "The well-established rule in this circuit is that deficiencies in the chain of custody go to the weight of the evidence, not its admissibility; once admitted, the jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence."  *Id.*; *see also State v. Huettl*, 2013-NMCA-038, ¶ 31, 305 P.3d 956, 965 (citing *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 311 n.1 (2009) (noting that gaps in the chain of custody go to the weight, not the admissibility of evidence)).

Here, the state district court judge admitted the CDs into evidence noting the gap in the chain of custody.  Doc. 18-5 at 106.  Although the chain of custody evidence was not perfect, the evidence was strong that the CDs in evidence were the same CDs that were taken from Mr. Dolphus' home.  Mr. Dolphus' girlfriend testified that she found two CDs in the townhome she

17

shared with Mr. Dolphus that contained child pornography. Doc. 18-5 at 24–27. She called the police, and two police officers met with her and went with her to her home. *Id.* at 28–29. Later that evening or very early the next morning, additional officers arrived at the townhome with a search warrant. *Id.* at 30–31; Doc. 18-6 at 43. The officers primarily searched the home office where Mr. Dolphus kept his computer, and where his girlfriend had found the two CDs with child pornography on them. *See* Doc. 18-5 at 31; *see also id.* at 20–25; Doc. 18-6 at 43–45. They also searched a safe in the closet of that same room; the safe had Mr. Dolphus' name on it. *See* Doc. 18-5 at 31–32, 77; Doc. 18-6 at 45. Although the officer who found the CDs did not testify, that officer turned all the CDs over to the officer supervising the execution of the warrant, who in turn transferred the CDs to the case agent at the conclusion of the search. *See* Doc. 18-5 at 76, 86. The case agent checked the CDs into the evidence room at the Albuquerque Police Department. *See* Doc. 18-5 at 76–77. Once the CDs were in the evidence room, they were checked out several times by various people, but there was no evidence that they were tampered with. *See* Doc. 18-6 at 61–63, 95–96. Based on this evidence, Judge Nakamura reasonably determined that the CDs were what they purported to be: CDs taken from Mr. Dolphus' home office during the execution of the search warrant.

In addition to the chain of custody evidence, other evidence supported the conclusion that Mr. Dolphus created the discs, and that they were found in his home. The district court found that there was an "uncanny similarity in the Defendant's handwriting and the handwriting on the labels of the CDs, especially the letters I, U, and F." Doc. 17-1 at 136–37. In addition, Mr. Dolphus told his girlfriend that "he got the stuff from the internet." Doc. 18-5 at 51. He admitted to the police that the CD found by his girlfriend belonged to him. *See* Doc. 18-5 at 71, 73–75 (Mr. Dolphus' police interview admitted into evidence, then played for the judge, with

18

portions highlighted); Doc. 18-7 at 31–33 (closing argument highlighting portions of Mr. Dolphus' police interview).  A computer forensics expert examined the CDs and explained how she determined when the child pornography was copied onto the CDs after being downloaded from the internet.  *See, e.g.*, Doc. 18-5 at 107–17; Doc. 18-6 at 96–103.  The New Mexico Court of Appeals concluded that "a reasonable fact-finder could find that [Mr. Dolphus] searched for child pornography, downloaded the images to his computer, copied the images to CDs, labeled the CDs, and stored the CDs in his safe among his other possessions." *Id.* at 365.  I find that, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime of manufacture beyond a reasonable doubt.  I recommend, therefore, that the Court deny Ground 3 of Mr. Dolphus' petition alleging insufficiency of evidence.

## IV. Conclusion

For the reasons stated above, I recommend that the Court deny Mr. Dolphus' petition and deny a certificate of appealability.

> **THE PARTIES ARE NOTIFIED that pursuant to Local Rule 73.1(a), a magistrate judge is assigned to this case "to preside over all non-dispositive pre-trial matters in accordance with FED. R. CIV. P. 72(a)." D.N.M.LR-Civ. 73.1(a). "A party may serve and file objections to [a magistrate judge's order on a non-dispositive pre-trial matter] within 14 days after being served with a copy." FED. R. CIV. P. 72(a). The party's objections must be both timely and specific to preserve an issue for review by the district court or appellate court.** *United States v. One Parcel of Real Prop.***, 73 F.3d 1057, 1060 (10th Cir. 1996). If objections are timely filed, the district judge must consider the objections, but will only set aside those parts of the magistrate judge's order which are "clearly erroneous" or "contrary to law." FED. R. CIV. P. 72(a). If objections are not timely filed, the firm waiver rule applies.** *See Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.***, 989 F.3d 747, 781–83 (10th Cir. 2021) ("the firm waiver rule applies when a party fails to object to a magistrate judge's non-dispositive ruling under Rule 72(a)"). "Under the firm waiver rule, a party who fails to make a timely objection to the magistrate judge's ruling waives appellate review of both the factual and legal questions."** *Id.* **at 781 n.23 (citations and alteration omitted);** *see also* **FED. R. CIV. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").**

_____
Laura Fashing
United States Magistrate Judge